IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


WILLIAM KIRKES,                    )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )     Case No. 06-1275-MLB
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of                    )
Social Security,                   )
                                   )
                    Defendant.     )
_____)


RECOMMENDATION AND REPORT


      This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff

supplemental security income payments.  The matter has been fully

briefed by the parties and has been referred to this court for a

recommendation and report.[2]

_____

      [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

      [2]On May 21, 2007, the court granted plaintiff's motion to
file a reply brief no later than June 4, 2007 (Doc. 13).
However, plaintiff neither filed a reply brief nor did plaintiff
request additional time beyond June 4, 2007 to file a reply
brief.  Therefore, the court deems the matter fully briefed by
the parties.

1

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's

2

decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency

3

determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four

4

and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

This case also involves termination of benefits after plaintiff was found disabled.  A seven-step sequential evaluation process is used in termination-of-benefit reviews.  If the Commissioner meets his burden of establishing that the claimant's medical condition has improved and that the improvement is related to the claimant's ability to work, the Commissioner must then demonstrate that the claimant is currently able to engage in substantial gainful activity.  Hayden v. Barnhart, 374 F.3d 986, 988 (10th Cir. 2004).  The burden of proof is on the Commissioner in a termination-of-benefits review.  Hayden, 374 F.3d at 991; Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

The seven-step sequential evaluation process is as follows: (1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment? (If yes, the claimant is still disabled.) (2) If not, has there been medical improvement?  If there has been medical improvement, as shown by a decrease in medical severity, see step 3.  If there has been no decrease in medical severity, there has been no medical improvement (see step 4). (3) If there has been medical improvement, the agency must determine whether it is related to the claimant's ability to work (whether there has been an increase in the residual functional capacity (RFC) based on the impairment that was present at the

5

time of the most favorable medical determination.  If medical
improvement is not related to the claimant's ability to work, see
step 4.  If medical improvement is related to claimant's ability
to work, see step 5.

(4) If no medical improvement was found at step 2, or that the
medical improvement was found at step 3 not to be related to
claimant's ability to work, the agency considers a number of
exceptions; if none of them apply, claimant's disability will be
found to continue.

(5) The agency will next determine whether all of the claimant's
current impairments in combination are severe.  If claimant has
no severe impairments, claimant will no longer be considered
disabled.

(6) If claimant's impairments are severe, the agency will assess
the claimant's current ability to do substantial gainful
activity.  The agency will assess the claimant's RFC and consider
whether the claimant can perform past work.  If claimant can
perform past work, claimant will no longer be considered
disabled.

(7) If claimant cannot perform past work, the agency will
consider, given claimant's RFC, whether claimant can perform
other work in the national economy.

20 C.F.R. § 416.994(b)(5).

     To apply the medical improvement test, the ALJ must first

compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most favorable medical decision finding the claimant disabled.  Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's RFC based on the current severity of the impairment(s) which was present at the claimant's last favorable medical decision.  The ALJ must then compare the new RFC with the RFC before the putative medical improvements.  The ALJ may find medical improvement related to an ability to work only if an increase in the current RFC is based on objective medical evidence.  Shepherd v. Apfel, 184 F.3d 1196, 1201 (10th Cir. 1999).

## II.  History of case

On June 14, 2000, plaintiff filed his application for supplemental security income, alleging disability as of May 1, 2000 (R. at 418).  On March 25, 2002, administrative law judge (ALJ) Michael R. Dayton issued a decision finding that plaintiff was not disabled (R. at 17-25).  Plaintiff sought judicial review of the agency decision.  On April 27, 2004, U.S. District Court Judge J. Thomas Marten reversed the decision of the Commissioner, and remanded the case for further hearing (R. at 499-500, 506-514).  On October 28, 2006, ALJ Dayton issued a new decision again finding that plaintiff was not disabled (R. at 418-431).  On July 18, 2006, the Appeals Council declined to accept

jurisdiction (R. at 402).  Plaintiff sought judicial review of the 2nd ALJ decision.

In his 2nd decision, ALJ Dayton found that plaintiff was not disabled from May 1, 2000 to November 1, 2003 ("prior period"); plaintiff was disabled from November 1, 2003 through October 31, 2004 ("closed period"); and his disability ended on October 31, 2004 ("current period") (R. at 418-419).

During all periods in question, the ALJ found that plaintiff did not engage in substantial gainful activity (R. at 421). During the prior and the closed periods, plaintiff had the following impairments, that in combination, were severe impairments: mild hepatitis C as of June 2001 becoming more serious by November 1, 2002 and placed on treatment regimen in February 2004; status post valve replacement from endocharditis from drug and alcohol abuse on July 2002; mild hypertension; osteoarthritis of both ankles due to trauma; mild renal insufficiency resolved by January 2001; cognitive dysfunction likely due to drug and alcohol abuse; and depression (R. at 421). During the prior period, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment (R. at 424).  During the closed period, the ALJ found that plaintiff's impairment equaled the criteria of listed impairment 5.05(F)(3), and therefore was under a disability during the closed period (R. at 423-424).

8

During the prior period, the ALJ, after establishing plaintiff's RFC, found that plaintiff could perform past relevant work as a cashier/stocker (R. at 430), and also found that the sedentary occupational base was not reduced and remained intact given plaintiff's RFC (R. at 430).  Therefore, the ALJ concluded that plaintiff was not disabled during the prior period.

During the current period, the ALJ found that plaintiff had no severe impairments (R. at 422).  The ALJ found that medical improvement occurred as of October 31, 2004 (R. at 426-427).  The ALJ also found that the medical improvement that has occurred is related to the ability to work because it has resulted in an increase in plaintiff's RFC to the point that he has no severe impairments (R. at 430).  The ALJ therefore concluded that plaintiff's disability ceased on October 31, 2004 (R. at 431).

**IV.  Did the ALJ fail to properly consider the evidence from Dr. Golan and the vocational expert when he made his RFC findings for the prior period?**

The ALJ's RFC findings for plaintiff during the prior period only contained physical limitations; it did not contain any mental limitations.  Dr. Stanley Golan is a psychiatrist who testified as a medical expert at the hearing based on his review of the record in the case (R. at 673-674).  Dr. Golan stated that, in his opinion, plaintiff was capable of simple employment from the onset date (May 1, 2000) through March 2004 (R. at 683).

9

Dr. Golan also testified that prior to March 2004, plaintiff had moderate limitations in 9 out of 20 categories.[3]  Dr. Golan defined "moderate" as not being able to do adequate work 20% of the time (R. at 688-689).  Dr. Jon Rosell, the vocational expert (VE) testified that, in combination with the physical limitations, the 9 mental limitations identified by Dr. Golan that plaintiff had prior to March 2004 would exclude or preclude work (R. at 738-739).

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.

_____

[3]The categories in which Dr. Golan found "moderate" limitations are: (3) the ability to understand and remember detailed instructions, (5) the ability to carry out detailed instructions, (6) the ability to maintain attention and concentration for extended periods, (8) the ability to sustain an ordinary routine without special supervision, (14) the ability to accept instructions and respond appropriately to criticism from supervisors, (17) the ability to respond appropriately to changes in the work setting, (18) the ability to be aware of normal hazards and take appropriate precautions, (19) the ability to travel in unfamiliar places or use public transportation, and (20) the ability to set realistic goals or make plans independently of others.

SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

<u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118,

1120 (10th Cir. 1993).

At step two, the ALJ made a finding that a number of

impairments in combination were severe impairments during the

prior period, including cognitive dysfunction and depression (R.

at 421).[4]  At step two, the ALJ is to determine whether the

claimant has an impairment or combination of impairments which

significantly limits the claimant's ability to do basic work

─────────────────

[4]Defendant's brief erroneously asserts that the ALJ found
that plaintiff's mental impairments were not severe during the
prior period (Doc. 11 at 4).  The brief cites to R. at 423, 426
in support of this assertion.  However, at R. at 423 of the ALJ
decision, the ALJ found that plaintiff's mental impairments were
not severe during the current period, not the prior period (R. at
422-423).  At R. at 426 of the ALJ decision, the ALJ is not
discussing whether plaintiff's mental impairments during the
prior period are severe, but is discussing whether plaintiff's
mental impairments meet or equal a listed impairment during the
prior period.  For purposes of the step three findings (Part B
criteria of 12.02 and 12.04), the ALJ found that plaintiff had no
limitations of activities of daily living, mild limitations in
his ability to maintain daily functioning and in his ability to
concentrate, and no evidence of decompensation (R. at 425-426).
Such findings generally result in a finding that the mental
impairment is not severe unless the evidence otherwise indicates
that there is more than a minimal limitation in the claimant's
ability to do basic work activities.  20 C.F.R. § 416.920a(d)(1).
However, in this case, the ALJ clearly listed cognitive
dysfunction and depression, in combination with other
impairments, as severe impairments during the prior period (R. at
421).  Furthermore, there would have been no need for the ALJ to
make findings at step three as to whether plaintiff's impairments
met or equaled a listed impairment if the ALJ had found at step
two that plaintiff's mental impairments were not severe.

activities.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Thus, at step two, the ALJ found that plaintiff had mental and physical impairments which, in combination, constituted severe impairments.  Furthermore, Dr. Golan testified that plaintiff had 9 moderate mental impairments.  No medical opinion conflicts with these findings by Dr. Golan.  The VE testified that these limitations would prevent a person from working.  However, without explanation, the ALJ did not include in his RFC findings any mental limitations.  Therefore, the court finds that the ALJ's RFC findings for the prior period are not supported by substantial evidence.  Thus, the case shall be remanded in order for the ALJ to specifically weigh the testimony of Dr. Golan regarding plaintiff's mental limitations.  The ALJ shall then make RFC findings which include a narrative discussion describing how the evidence supports each conclusion, and if the RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  Once proper RFC findings have been made, then the ALJ shall determine whether plaintiff can perform past work or other work in the national economy given plaintiff's physical and mental limitations.

**V.  Did the ALJ err in his step four findings for the prior period?**

Because the case is being remanded in order to make proper RFC findings for the prior period, the court will not further

address the issue of whether the ALJ erred in his step four

findings because proper RFC findings are an integral component of

the step four analysis.  Upon remand, the ALJ shall adhere to the

following when making step four findings:  At step four, the ALJ

is required by social security ruling (82-62) to make findings of

fact regarding: 1) the individual's residual functional capacity,

2) the physical and mental demands of prior jobs or occupations,

and 3) the ability of the individual to return to the past

occupation given his or her residual functional capacity.  Henrie

v. United States Department of HHS, 13 F.3d 359, 361 (1993).  At

each of these three phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  An ALJ

can comply with these requirements if he quotes the VE's

testimony with approval in support of his own findings at phases

two and three of the step four analysis.  Doyal v. Barnhart, 331

F.3d 758, 760-761 (10th Cir. 2003).  At the second phase of the

step four analysis, the ALJ must make findings regarding the

physical and mental demands of the claimant's past relevant work.

When the ALJ essentially skips the second phase of the step four

analysis by not making any findings regarding the physical and

mental demands of claimant's past work, either as performed or as

it is generally performed in the national economy, then the case

shall be remanded in order for the ALJ to make the specific

factual findings regarding the demands of claimant's past

relevant work.  <u>Clardy v. Barnhart</u>, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

**VI.  Did the ALJ err in finding that plaintiff no longer met or equaled a listed impairment as of October 31, 2004?**

The ALJ relied on the testimony of Dr. Winkler in finding that plaintiff equaled listed impairment 5.05(F)(3) from November 1, 2003 through October 31, 2004 (R. at 423-424, 426-427).  Dr. Winkler testified that plaintiff equaled listing 5.05(F)(3) as of November 2003.  Dr. Winkler testified that plaintiff's high viral load in November 2003, in combination with limitations due to osteoarthritis of the ankles, the aortic valve replacement, and Dr. Moeller's thorough evaluation with some of the memory issues would indicate that plaintiff equaled that particular listing (R. at 704).

Dr. Winkler testified that plaintiff equaled listed impairment 5.05(F)(3) in November 2003.  However, Dr. Winkler never indicated in his testimony that the plaintiff no longer met the listed impairment, or if so, when that occurred.  The ALJ noted the statement of plaintiff's counsel that, according to a treating source, plaintiff's viral load was zero in September 2004 (R. at 427, 667), and the ALJ also relied on plaintiff's testimony that he returned to part-time work without limitations in November 2004 (R. at 423).  However, none of the other bases for Dr. Winkler's finding that plaintiff equaled a listed

14

impairment were addressed by the ALJ.  The ALJ does not cite to any medical evidence that plaintiff no longer met the listed impairment as of November 1, 2004.

The concern of the court is that there is no clear medical evidence that plaintiff no longer equals listed impairment 5.05(F)(3).  The reduction in the viral load and plaintiff's return to work does not provide clear medical evidence that the listed impairment is no longer equaled.  As the court noted above, the burden of proof is on the Commissioner in a termination-of-benefits review.  Therefore, this case shall be remanded in order for the ALJ to determine, based on medical evidence, that plaintiff no longer equals this listed impairment.

**VII.  Did the ALJ err in finding that plaintiff had no severe impairments during the current period?**

The burden of proof at step two is on the plaintiff.  <u>See Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect

15

on his or her ability to do basic work activities.[5]  <u>Williams</u>,844

F.2d at 751.  However, the claimant must show more than the mere

presence of a condition or ailment.  If the medical severity of a

claimant's impairments is so slight that the impairments could

not interfere with or have a serious impact on the claimant's

ability to do basic work activities, the impairments do not

prevent the claimant from engaging in substantial work activity.

Thus, at step two, the ALJ looks at the claimant's impairment or

combination of impairments only and determines the impact the

impairment would have on his or her ability to work.  <u>Hinkle v.

Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had

an impairment and how severe it was during the time the claimant

alleges they were disabled.  20 C.F.R. § 404.1512(c),

§ 416.912(c).  The evidence that a claimant has an impairment

must come from acceptable medical sources including licensed

physicians or psychologists.  20 C.F.R. § 404.1513(a),

§ 416.913(a).  Evidence from other medical sources, including

---

[5]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir.
2004).

therapists, nurse-practitioners, and physicians' assistants, may

be used to show the severity of an impairment and how it affects

the ability to work.   20 C.F.R. § 404.1513(d)(1),

§ 416.913(d)(1).

On January 13, 2005, Dr. Moeller, a psychologist conducted a

psychological evaluation on the plaintiff.   The summary of his

report is as follows:

> This case presents a very confusing
> collection of clinical and psychometric data.
>
> On one hand, Mr. Kirkes states he is capable
> of sustaining simple, gainful employment and
> has essentially no psychological complaints.
> On the other hand, he is involved in an
> appeal process, hoping to establish his
> disability status.
>
> The MMPI-2 reflects a valid profile and a
> relatively simple-appearing, incompletely
> treated depression. There was no indication
> of psychotic features on the test protocol.
> His ability and memory levels are within the
> low average range. All of these suggest his
> capacity for simple, gainful employment.
>
> However, there is also a rather bizarre
> thought structure and at least two episodes
> of spiritual enlightenment reported by the
> applicant. Between these two episodes (July
> 23, 2002 and September of 2004), he
> apparently felt symptomatic and impaired
> enough to continue his Disability
> application.
>
> In addition, examining his WAIS-III results
> more closely, we see a 42 point difference
> between the index scores of Processing Speed
> (at the 77th percentile) and Working Memory
> (at the 2nd percentile).
>
> From these scores, l do not believe Mr.

17

Kirkes has the capacity to sustain his cognitive processes - especially Working Memory tasks - in any type of ongoing, SUW.

Additionally, he currently appears to be in denial over any psychological issues for himself. Yet, the bizarreness of his thought content suggests either a psychotic process secondary to his depression or the possibility of an as yet undiagnosed Bipolar Disorder.

I cannot explain the absence of any indications of either of these on the apparently valid MMPI-2 protocol.

There is an absence of any significant mental health history for this gentleman, and I would strongly recommend he consult the staff at ComCare.

In the meantime, I wish him well as he attempts to pursue his goals and to obtain employment. I strongly urge him to do this from the context of an open DVR case - and the support he would be given by the resources of that office.

While he hopefully does this, I respectfully recommend he be considered for disability status with a review after 18 to 24 months.

I do not believe he currently is capable of sustaining any long-term employment. I believe it will take him longer than the next 12 month period to establish himself as being successful in maintaining this employment.

I believe disability status at this time will be a safeguard for him.

(R. at 644-645). Dr. Moeller went on to opine that plaintiff had

a "fair" ability to (1) follow work rules, (2) relate to co-

workers, (3) deal with the public, (4) use judgment, (5) interact

with supervisors, (6) maintain attention/concentration, and (7)

understand, remember and carry out detailed, but not complex job instructions.  Dr. Moeller opined that plaintiff had a "poor" ability to (1) deal with work stresses, (2) understand, remember and carry out complex job instructions, (3) behave in an emotionally stable manner, and (4) relate predictably in social situations.  Dr. Moeller also opined that plaintiff had no useful ability to demonstrate reliability (R. at 653-654).

Dr. Golan, a psychiatrist, who testified as a medical expert, opined that plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace (R. at 680), although he did not indicate the time span for this opinion.  Dr. Golan also stated that plaintiff had moderate limitations in 11 of 20 categories after March 2004 (R. at 688-689).[6]  Dr. Golan indicated that the consultative exam by Dr. Moeller was valid, and agreed with Dr. Moeller's conclusion that plaintiff is not capable of sustaining long-term employment (R. at 682).  The opinions of Dr. Moeller and Dr. Golan are the only medical opinions in the record that relate to the current period.

The ALJ found that plaintiff had no severe impairments

---

[6]This would include the 9 categories set forth in footnote 3, plus these additional categories: (7) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (11) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest period.

during the current period (R. at 422).  Although the ALJ
acknowledged the evaluation by Dr. Moeller and the testimony of
Dr. Golan, the ALJ found that plaintiff's mental impairments were
not severe in light of his testimony that he does not feel
depressed, does not need medication, and is working (R. at 423).
When the ALJ asked plaintiff if he was disabled as of October
2004, plaintiff responded by saying: "Nothing like I was before,
Your Honor" (R. at 667).  Plaintiff then testified that he was
capable of doing some types of gainful activity (R. at 667), and
indicated that he would be able to do work limited to simple,
unskilled work, with a lifting limitation of 20 pounds, and
standing and walking no more than 2 hours of an 8 hour day (R. at
668).  In fact, he indicated he can stand for 4 hours of an 8
hour day (R. at 668).  He later testified that he was working 20
hours a week as a clerk at a liquor store (R. at 720), and could
work 40 hours a week if it was second shift work (R. at 721).
Plaintiff began this part-time work at the liquor store in
November 2004 (R. at 667).

      The evaluation of Dr. Moeller and the testimony of Dr. Golan
provide medical evidence that plaintiff has severe mental
impairments.  The ALJ relies on the testimony of plaintiff that
he is able to work to completely discount this medical evidence.
However, the issue at step two is simply whether plaintiff has
severe impairments which have more than a minimal effect on his

20

ability to do basic work activities; the issue at step two is not whether or not plaintiff can perform past relevant work or other work in the national economy.  Thus, plaintiff's testimony does not necessarily dispute the clear medical testimony of a severe mental impairment.

Therefore, this case shall be remanded in order for the ALJ to determine if plaintiff's mental impairments at step two during the current period are severe.  If so, the ALJ will then determine what limitations plaintiff has, if any, based on his mental impairment, and determine if plaintiff can perform past relevant work or other work in the national economy given those limitations.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 11, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

21